UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

**DECISION AND ORDER**
26-CR-57-A

TEHRAN MUHAMMAD,

Defendant.

Defendant Tehran Muhammad moves pursuant to 18 U.S.C. § 3145(b) to revoke (Dkt. No. 15) an order of detention (Dkt. No. 3) entered by Magistrate Judge H. Kenneth Schroeder, Jr. after making oral findings at a detention hearing (*see* Dkt. No. 23 [Hr'g Tr.], pp. 15-19). The Government submitted a response in opposition (Dkt. No. 20), Defendant filed a reply (Dkt. No. 21), and the U.S. Probation Office submitted a memorandum opposing the motion.

Oral argument was heard by this Court on September 8, 2026. On September 14, 2026, the Court entered a text order (Dkt. No. 25), asking the U.S. Probation Office for clarification regarding Defendant's 2005 felony conviction or convictions. The U.S. Probation Office provided this information to the Court and the parties in a supplemental memorandum dated September 14, 2026, attaching the

police report, Superior Court Information, and Certificate of Conviction related to Defendant's 2005 arrest and felony conviction.[1]

For the reasons stated herein and for most of the reasons given by Magistrate Judge Schroeder in issuing the detention order, the Court finds that Defendant has not overcome the applicable statutory presumption of dangerousness in 18 U.S.C. § 3142(e)(3), and therefore no conditions of release, or combination of conditions, will reasonably assure the safety of the community or the safety of individuals in the community. Accordingly, the Court denies Defendant's motion to revoke the order of detention, and Defendant will remain detained pending trial.

## **BACKGROUND**

A criminal complaint (Dkt. No. 1) was filed against Defendant on February 27, 2026, charging him with possession with intent to distribute, and to distribute, cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1); and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 922(a)(8) (Count 2). During the initial appearance on the complaint, the Government requested detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and 3142(f)(1)(E), and on March 4, 2026, a detention hearing was held before Magistrate Judge H. Kenneth Schroeder Jr. *See* Dkt. No. 23 (Hr'g Tr.).

After considering the Government's proffer, the response from defense counsel, the U.S. Probation Office's pretrial services report, and the sworn

[1] The parties were instructed to submit any responses regarding Probation's supplemental memorandum by September 15, 2026, at 12:00 p.m. Neither party elected to do so.

information set forth in the affidavit supporting the criminal complaint, Magistrate Judge Schroeder found that Defendant had not rebutted the applicable presumption of detention built into the Bail Reform Act of 1984,[2] and determined that Defendant should be detained pending trial because the Government proved by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.[3]

Less than one month after the detention hearing, on April 1, 2026, an Indictment (Dkt. No. 5) was returned against Defendant, charging him with distribution of cocaine base on two separate dates, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 1 and 2); and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 3). When Defendant was arraigned on the indictment, Magistrate Judge Schroeder found that no changed circumstances existed that would cause him to reconsider the order of detention. *See* CM/ECF Minute Entry, 04/06/2026.

On August 7, 2026, Defendant filed the instant motion seeking to revoke the pretrial detention order and to release him pending trial.

---

[2] The presumption applies in this case due to the nature of the drug charge against Defendant. *See* 18 U.S.C. § 3142(e)(3)(A); 21 U.S.C. § 841(b)(1)(C). Here, the grand jury's subsequent return of the indictment establishes conclusively the probable cause necessary to warrant application of the presumption. *See United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

[3] Both the Government and the U.S. Probation Office recommended detention based upon not only Defendant's dangerousness, but also his risk of flight. Magistrate Judge Schroeder did not find, however, that the Government met its burden of proving by a preponderance of the evidence that Defendant is a flight risk.

**DISCUSSION**

When the § 3142(e) rebuttable presumption in favor of detention arises, the Government retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s]…to rebut the presumption." *United States v. Rodriguez*, 950 F. 2d 85, 88 (citation omitted) (2d Cir. 1991). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors [under § 3142(g)] to be considered when deciding whether to release a defendant." *Id.* (citation omitted). If the § 3142(e) presumption is unrebutted, that alone is sufficient to sustain the Government's burden of proof on danger. *See id.*; *see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

This Court reviews Magistrate Judge Schroeder's bail determination *de novo*. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) ("[A] district court…should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.") (internal citations omitted). When conducting its review, the Court may rely on the record of proceedings before the magistrate judge and may also accept additional evidence. *See United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

Upon *de novo* review, this Court finds that Defendant poses a danger to the community that cannot be sufficiently mitigated by release conditions.

The charges contained in the Indictment alone create a presumption in favor of detention. Defendant is accused of serious offenses: drug transactions conducted on two separate occasions with an undercover officer in a Tops Markets parking lot; and possession of a firearm (AR-style rifle) located within Defendant's

alleged new residence or a residence used by Defendant, at 77 Seminole Parkway, and possession of ammunition located within such residence and also within a vehicle used by Defendant. In addition to the firearm and ammunition seized at 77 Seminole Parkway, officers also recovered a digital scale, packaging material, a blender cup with white residue ("cut"), and plastic baggies. Results from laboratory testing on the digital scale and blender revealed that those items contained cocaine and fentanyl/heroin residue, respectively. If convicted as charged, Defendant will face a maximum term of imprisonment of 20 years on each of the drug distribution counts. *See* 21 U.S.C. § 841(b)(1)(C). The felon-in-possession count carries a maximum of 15 years' imprisonment. *See* 18 U.S.C. § 922(a)(8).

Proffered evidence also establishes that Defendant is a suspect in an uncharged overdose death that occurred in mid-February 2025 at Sisters of Charity Hospital; in fact, the overdose death prompted law enforcement's decision to investigate Defendant's drug-dealing.[4]

Magistrate Judge Schroeder noted the strength of the evidence against Defendant. In this Court's view—recognizing that Defendant is presumed innocent of the charges against him and not forecasting the likelihood of a conviction—the Government's proffered evidence appears quite strong and straightforward, and the weight of the evidence supports pre-trial detention.

[4] To be sure, the Government has not superseded the indictment to include charges related to the overdose death. However, both parties acknowledge that the Government has postponed presenting such evidence to the grand jury at least in part due to defense counsel's request, to further plea negotiations between the parties.

Law enforcement surveillance, copies of text messages between Defendant and the undercover officer, anticipated testimony by the undercover officer identifying Defendant, and surveillance video footage obtained from Tops Markets link Defendant to the two charged controlled buys of cocaine base, which occurred on or about January 30, 2026, and February 3, 2026. During his post-arrest statement and after waiving his *Miranda* rights, Defendant admitted he had been distributing drugs, and the substances purchased on each occasion have been confirmed by laboratory testing to contain cocaine base. Moreover, a highly distinctive tan sweatshirt worn by Defendant during the first controlled buy, as depicted in the surveillance video, was later located inside 77 Seminole Parkway during the execution of the search warrant on February 27, 2026. As to the felon-in-possession charge, the plastic baggies and a white substance were found in a box on a shelf in the same closet as the firearm.

Defendant's history and characteristics cut both ways, although the Court finds the scales tip in favor of his detention. Defendant has ties to the community and a history of stable employment as a security officer. He is also the father of a son born shortly after the detention hearing was held, and his girlfriend and son's mother wrote a letter to the Court stating her belief that his son is his "greatest motivation" and that Defendant will comply with any conditions of release that are imposed.[5] Defendant also reported, however, multiple mental health diagnoses and daily marijuana use, and a prior history of daily use of crack cocaine and heroin

[5] Defendant's girlfriend is notably the victim/complainant of his 2005 felony conviction.

(although he reported he discontinued use of the latter two substances of his own volition over one year before he was interviewed by the U.S. Probation Office).

Although Defendant's criminal history is dated, it is certainly alarming. In 2005, Defendant was convicted of rape in the first degree and attempted burglary in the first degree; he was sentenced to 15 years' incarceration and 5 years of post-release supervision, with an order of protection imposed. According to the Government's proffer and documentation from Probation, the conduct underlying this conviction involved Defendant breaking in the residence of his ex-girlfriend, displaying a knife, raping her, and threatening to kill her if she called the police. In 2018, Defendant was released to parole, but his parole was revoked only about 4 ½ months later due to a violation. Defendant was re-paroled in 2020, and parole was revoked approximately 14 months later because of a second parole violation. He was re-paroled in 2022 and reached his maximum expiration in April 2023.

Defendant argues that Magistrate Judge Schroeder's detention determination was "fundamentally tainted" by "incorrect information." Part of the Government's proffer was that the 2005 felony conviction involved Defendant displaying a gun. Defendant provided proof that the weapon he displayed was instead a knife (*see* Dkt. No. 15-3 [copy of Superior Court Information]), and the Government agrees its statement regarding the gun was erroneous. Regardless of whether the type of weapon in Defendant's prior felony offense somehow influenced Magistrate Judge Schroeder's decision to detain him—given that Defendant is now charged with possession of a gun—Defendant was nevertheless found guilty of forcible rape, an undeniably serious and violent offense notwithstanding the type of weapon involved.

Defendant further argues that the imposition of stringent release conditions should reasonably assure the Court that he would not pose a danger upon release. To the contrary, the Court finds that Defendant poses a danger to the community, and that the proposed conditions set forth by him are not sufficiently reasonable to assure the Court of the community's safety should he be released.

The evidence is strong that Defendant possessed and intended to distribute cocaine base on two separate dates, and that he knowingly possessed a firearm and ammunition after a previous felony conviction. The danger that Defendant poses is exactly the sort of danger to the community that prompted Congress to enact the presumption that persons charged with serious drug offenses pose a danger while on pretrial supervision. *See Leon*, 766 F.2d at 81 (danger to the community includes "the harm to society caused by narcotics trafficking"). The Court lacks confidence that Defendant would likely abide by conditions of release, particularly given his history of violating such conditions. The Court finds by a standard of clear and convincing evidence that electronic monitoring, home incarceration, and the other conditions proposed by the Defense are inadequate to alleviate the danger to the community posed by Defendant.

## **CONCLUSION**

For the above reasons, Defendant's motion (Dkt. No. 15) to revoke Magistrate Judge Schroeder's pretrial detention order is denied. Defendant shall remain committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal. The Attorney General shall afford

Defendant a reasonable opportunity for private consultation with counsel. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of his appearance in connection with any Court proceeding.

This ruling is without prejudice to Defendant's right to the presumption of innocence, and to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of his pretrial detention based upon changed circumstances.

**SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: September 15, 2026
Buffalo, New York